BENTON, J.
Marcus Eugene Green, Jr., appeals his conviction for possession of cocaine, contending the trial court erred in denying his motion to suppress cocaine seized from a motel room. Upholding the trial court’s finding that the room was no longer Mr. Green’s by the time the motel owner invited a deputy sheriff inside and showed him the cocaine, we affirm the conviction.
Charged with possession of cocaine found in a room at the Mayfair Motel on August 19, 2001, Mr. Green filed a motion to suppress. The trial court denied the motion, then found (in keeping with the parties’ stipulation) that its ruling on the motion was dispositive of the whole case. In entering his plea of nolo contendere, Mr. Green reserved the right to appeal denial of the suppression motion. See Griffin v. State, 758 So.2d 676, 677 (Fla. 1st DCA 2000) (“Pleading to a criminal charge while reserving the right to seek appellate review of a crucial ruling avoids an unnecessary trial. State v. Ashby, 245 So.2d 225 (Fla.1971).... But an ‘Ashby nolo plea is permissible only when the legal issue to be determined on appeal is dispositive of the case.’ Brown v. State, 376 So.2d 382, 384 (Fla.1979).”).
The state did not contest appellant’s standing to file the motion to suppress.[1] Instead, it called two witnesses at the suppression hearing in order to prove that the motel owner’s consent excused the failure to obtain a search warrant. See Coolidge v. New Hampshire, 403 U.S. 443, 487-90, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Stoner v. California, 376 U.S. 483, 489-90, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Jones v. State, 648 So.2d 669, 674 (Fla.1994) (“As a general rule, a warrant-less search or seizure is per se unreasonable, unless the search or seizure falls within one of the well established exceptions to the warrant requirement. Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993); United States v. Place, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983)....”); Morse v. State, 604 So.2d 496, 501 (Fla. 1st DCA 1992) (‘War-rantless searches are per se unreasonable unless conducted within an established exception such as personal consent, abandonment, or consent by a third party with *313 common authority over the premises”). See also Niemann v. State, 819 So.2d 166, 168 (Fla. 4th DCA 2002) (“In the absence of a search warrant, the State has the burden of proof to justify the warrantless search.... ”). Proof of consent also obviates the need to prove probable cause. See Reynolds v. State, 592 So.2d 1082, 1086 (Fla.1992) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).
We are “bound, on search and seizure issues, to follow the opinions of the United States Supreme Court regardless of whether the claim of an illegal arrest or search is predicated upon the provisions of the Florida or United States Constitutions.” State v. Butler, 655 So.2d 1123, 1125 (Fla.1995). The Florida constitutional “right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures ... shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.” Art. I, § 12, Fla. Const.
At the suppression hearing in the present case, the state called the only witnesses, Earl F. Jacquay, who owned the motel, and Deputy Sheriff Edward M. Lewis. Mr. Jacquay testified that, on August 19, 2001, Mr. Green had not paid for his room beyond the check-out time of 11:00 a.m. and that, at about 3:00 p.m., he went to the room with a “lock-out, which is a device we put on the doorknobs to lock the door so they can’t skip and take off owing us money.” He testified that “normally we would have ... locked him out at 11:00 and bagged everything up, called bag and tag,” and answered affirmatively the question “You had no obligation after 11:00 in the morning to hold the room, you could have rented it at any time to whoever you wanted to?” He testified that as of 11:00 a.m. the room “was ours because he hadn’t paid for the day.”
Mr. Jacquay testified that he repossessed the room for Mr. Green’s failure to pay rent;[2] and that, when Mr. Green eventually turned up and offered to pay the rent, he declined to accept it or to allow reentry. But he conceded that he would not have relet the room to somebody else that day, explaining that “because it was late and the housekeepers were already finishing up, I was gonna let it go till the next morning.” He further testified that, entering the room to turn off a television set, he noticed what he believed to be crack cocaine on a dresser, then exited the room, placed the lock-out on the door, and called the police.
Deputy Sheriff Lewis testified that, when he arrived at the motel, he met Mr. Jacquay, who gave him permission to enter the motel room, where he seized the cocaine. Mr. Jacquay testified that he had by then informed Mr. Green that his right to occupy the room had expired for nonpayment, and denied him reentry, but the record does not establish whether he also told Deputy Sheriff Lewis that he had ejected Mr. Green.
*314 No evidence was adduced as to the motel owner’s apparent authority to consent to a search, apart from evidence of his actual authority. See Illinois v. Rodriguez, 497 U.S. 177, 186-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); Williams v. State, 788 So.2d 334, 336-37 (Fla. 5th DCA 2001). At the conclusion of the hearing, the trial court denied the motion to suppress and stated the grounds for its ruling:
[T]he central basis [for denying the motion to suppress] was the room was owned and the right to—the access and occupancy of the room was the owner of the Mayfair Motel at the time. Mr. Green was not entitled, nor did he have exclusive use and occupancy of the residence.
On appeal, Mr. Green maintains that Mr. Jacquay entered the motel room unlawfully both before and after Deputy Sheriff Lewis arrived; and argues that the decision in Morse, which held that the “manager of the Destination Motel could not terminate appellant’s tenancy on the spot by an immediate Verbal eviction,’ ” 604 So.2d at 500, requires reversal.
“In reviewing search and seizure decisions, Florida courts and federal courts alike must apply different standards of review, depending on the nature of the questions presented. Aspects or components of the trial court’s decision resolving legal questions are subject to de novo review, while factual decisions by the trial court are entitled to deference commensurate with the trial judge’s superior vantage point for resolving factual disputes.” State v. Setzler, 667 So.2d 343, 344-45 (Fla. 1st DCA 1995). See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598, 605 (Fla.2001); State v. Eldridge, 814 So.2d 1138, 1140 (Fla. 1st DCA 2002) (“The standard of review of an order granting a motion to suppress evidence depends on the issue adjudicated by the trial court.”).
As homes to the peripatetic, hotel and motel rooms are legally imbued “with the sanctity of private dwellings, ordinarily afforded the most stringent Fourth Amendment protection.” United States v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). See State v. Titus, 707 So.2d 706, 708 (Fla. 1998). But the room’s protected status does not outlast the guest’s right to occupy the room. See Gilbert v. State, 789 So.2d 426, 428 (Fla. 4th DCA 2001) (“[F]or Fourth Amendment purposes a motel room is considered a private dwelling where the occupant is legally there, has paid for the room, and has not been asked to leave.”); Gnann v. State, 662 So.2d 406, 407 (Fla. 2d DCA 1995) (“A motel room is considered a private dwelling if the occupant is there legally, has paid or arranged to pay, and has not been asked to leave.”); McGibiany v. State, 399 So.2d 125, 126 (Fla. 1st DCA 1981); Sheff v. State, 301 So.2d 13, 16 (Fla. 1st DCA 1974) (“A hotel room or a motel room is the private dwelling of the occupant so long as he is legally there, paying the requisite rent or charge, or has made appropriate arrangements with the management for such payment, and has not been requested by the management to leave for any valid or legal reason.”), affirmed, 329 So.2d 270, 274 (Fla.1976).
While the Fourth Amendment protects against unreasonable searches conducted under the aegis of governmental authority, moreover, it does not protect against unlawful searches by private individuals. See United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (“This Court has also consistently construed this protection as proscribing only governmental action; it is wholly inapplicable ‘to a search or seizure, *315 even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.’ ”). Nobody contends that Mr. Jac-quay was acting as an agent for the state, rather than on his own behalf as the motel owner, at the time he initially entered the room. See Glasser v. State, 737 So.2d 597, 598-99 (Fla. 4th DCA 1999); F.P. v. State, 528 So.2d 1253, 1254-55 (Fla. 1st DCA 1988); State v. Weiss, 449 So.2d 915, 916— 17 (Fla. 3d DCA 1984). Even if the room was still Mr. Green’s when the motel owner initially entered (because Mr. Green had not yet been given notice to vacate), that entry by a private actor did not violate any constitutional protection against unreasonable search or seizure.
Once Mr. Jacquay informed Mr. Green that his right to the room had terminated for failure to pay the room rent, and denied him entry, he had given him oral notice and ejected him as an “undesirable guest,” as contemplated by section 509.141(2), Florida Statutes (2001). The trial judge’s implicit finding that Mr. Green had failed to pay the agreed, daily rent by the agreed-upon checkout time was not clearly erroneous. The Mayfair’s daily charges distinguish the present case from Morse, where the roomer had “paid rent semi-monthly, [so that, the court found,] his tenancy was for two-week periods,” 604 So.2d at 500, and precluded eviction without compliance with chapter 83, Florida Statutes (1989). In contrast, Mr. Green spent only “a couple of days” at the Mayfair Motel.
Affirmed.
MINER and LEWIS, JJ., concur.

. "The defense has the burden to prove standing, where standing is at issue. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Jones v. State, 648 So.2d 669, 674-76 (Fla.1994), cert. denied, 515 U.S. 1147, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995). See United States v. Padilla, 508 U.S. 77, 79-81, 113 S.Ct. 1936, 1938-39, 123 L.Ed.2d 635 (1993); Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).” State v. Setzler, 667 So.2d 343, 345 (Fla. 1st DCA 1995).

. Section 509.141(1), Florida Statutes (2001), provides:
The operator of any public lodging establishment ... may remove or cause to be removed from such establishment, in the manner hereinafter provided, any guest of the establishment ... who, in the case of a public lodging establishment, fails to make payment of rent at the agreed-upon rental rate by the agreed-upon checkout time; who, in the case of a public lodging establishment, fails to check out by the time agreed upon in writing by the guest and public lodging establishment at check-in unless an extension of time is agreed to by the public lodging establishment and guest prior to checkout....