788 So.2d 334 (2001)
Bobby WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-2226.
District Court of Appeal of Florida, Fifth District.
May 25, 2001.
Rehearing Denied July 2, 2001.
*335 James B. Gibson, Public Defender, and M.A. Lucas, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Denise O. Simpson, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, R.B., J.
Bobby Williams pled nolo contendere to possession of cocaine but reserved the right to appeal the trial court's denial of his motion to suppress. He contends that evidence seized from his motel room was improperly obtained because no one with actual or apparent authority authorized police officers to enter his room. We agree and reverse.
Because the Daytona Beach Police Department had received several complaints regarding the sale of drugs from room 202 of the Sea Brazil Motel, Detective Herbert Dockery and four other Daytona Beach police officers went to room 202 for a *336 "knock and talk."[1] Upon arriving at the motel, the officers, dressed in identifiable police uniforms, knocked on the door of room 202. According to Detective Dockery, after he knocked on the door:
A voice said, "Who is it?" I said, "Herb." I replied "Herb," which is my first name, Herbert. Everybody calls me Herb. At that point, a white female answered the door-well, opened the door actually, and she stepped back as she's saying, "come in."
The woman who answered the door was Catherine Quain. Dockery testified that the police officers did not know Quain or know of her connection, if any, to the room, nor did they know who had rented the room. All five officers then entered the motel room and advised the occupants that they were there to investigate suspected narcotics activity. About this time, Detective Dockery saw Williams, who was sitting on a bed, grab a baggie from the night stand and put it in his mouth. The officers attempted to grab the baggie and Williams threw up some "green leafy substance" that they correctly believed to be marijuana. The officers then found cocaine in the freezer and arrested Williams.
Through counsel, Williams filed a motion to suppress, contending that the officers entry into the room was illegal because Quain lacked the actual or apparent authority to authorize the officers to enter. In denying the motion to suppress, the trial judge found that Quain had the apparent authority to authorize the police entry into the room, though she lacked any actual authority. Because we find that the evidence does not support the finding that Quain had apparent authority to authorize the officers to enter into the motel room, we reverse.
On review of a trial court's order on a suppression motion, legal questions are subject to de novo review while the factual decisions by the trial court, viewed in light of constitutionally mandated burdens of proof, are entitled to deference if supported by competent substantial evidence. Phuagnong v. State, 714 So.2d 527, 529 (Fla. 1st DCA 1998); Butler v. State, 706 So.2d 100, 101 (Fla. 1st DCA 1998).
In the absence of a warrant or exigent circumstances justifying a search, the State has the burden of proving the police were given free and voluntary consent to enter the premises by someone with actual or apparent authority to do so. It is not enough to show the occupant merely submitted to a claim of lawful authority. Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). A warrantless entry is valid when based on the consent of a third party whom police, at the time of entry, reasonably believe possesses common authority over the premises, but who in fact does not possess such authority. Id. at 186, 110 S.Ct. 2793. But Rodriguez cautioned that mere consent to an officer's entry is not, standing alone, sufficient to justify the officer's belief that the person giving consent has the authority to do so. Specifically, the Supreme Court said:
[W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding *337 circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment... `warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.
Rodriguez, 497 U.S. at 188-89, 110 S.Ct. 2793 (citations omitted).
To justify the entry and subsequent seizure in this case, the court must determine if Quain had authority over the room, either solely or in common with others, as a prerequisite to determining her actual or apparent authority to consent to the officers' entry of the motel room.[2] In U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court said:
Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of these co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
Id. at 171 n. 7, 94 S.Ct. 988 (citations omitted).
"The mere fact that an unknown person opens the door when a police officer knocks, cannot alone, support a reasonable belief that the person possesses authority to consent to the officer's entry." Cooper v. State, 706 So.2d 369, 371-72 (Fla. 2d DCA 1998). Otherwise, the third party consent exception to the warrant requirement would consume the requirement. Rodriguez requires that the police make warrantless entries into premises only under circumstances that would cause a person of reasonable caution to believe that the person making the invitation is authorized to do so. Here, the police, based on nothing more than an unidentified woman with no known connection to the motel room other than her act of opening the door, concluded that she had the actual or apparent authority to consent to such entry. We find that conclusion to be unsupported by the facts then known to the police officers.
For the foregoing reasons, we conclude that the trial court erred in denying the motion to suppress. Accordingly, we reverse the trial court's order and remand the matter for proceedings consistent herewith.
REVERSED AND REMANDED.
SHARP, W., and PETERSON, JJ., concur.
NOTES
[1] According to Detective Monde, another officer who testified at the suppression hearing, a "knock and talk" involves knocking on the door of a residence or hotel room and seeking consent to enter for the purpose of investigating suspected criminal activity. Detective Monde testified that if consent is not given, consideration is given to obtaining a search warrant if sufficient evidence exists.
[2] Although it was later determined that Quain was the manager of the motel and was Williams' girlfriend, the police did not know this at the time they entered the motel room. As such, these facts cannot be considered in determining Quain's authority because Rodriguez requires the court to make that determination based upon the facts available to the officer at the time of entry.