SUAREZ, J.
The State appeals the trial court’s grant of a motion to suppress where the defendant was charged with unlawful possession of cannabis in violation of section 893.13(6)(a), Florida Statutes (2007), and unlawfully and feloniously manufacturing cannabis with the intent to sell in violation of section 893.13(l)(a)(2), Florida Statutes (2007). We reverse.
The defendant was charged with unlawful possession of cannabis in violation of section 893.13(6)(a), Florida Statutes (2007), and unlawfully and feloniously manufacturing cannabis with the intent to sell in violation of section 893.13(l)(a)(2), Florida Statutes (2007). The defendant filed a motion to suppress on grounds that he did not consent willingly to the search, the search was not incident to a lawful arrest, and the evidence obtained was the fruit of the poisonous tree. The trial court granted the motion to suppress, and this appeal follows.
At the’ suppression hearing on October 26, 2009, Detective Bernal of the Miami-Dade Police Department testified that, on May 21, 2009, based on an anonymous tip, the officer proceeded to the location of S.W. 154th Place to check out a possible grow house. The detective explained that she was part of a special detail and that her unit specifically responded to tips, *316 grow houses, and crime-stopper tips. ■ She proceeded to the location with Detectives Carey and Giordano and Sergeant Taber-no. Upon arriving at the scene, Detectives Bernal and Carey went to the front door of the residence where they detected the smell of marijuana. Detective Giordano and Sergeant Taberno went to the side of the house, where they were out of the view of Detective Bernal. Detective Carey knocked on the door in an attempt to contact the occupant. The defendant opened the door from within the residence. Detectives Bernal and Carey were in plain clothes. Detective Bernal had on a tactical vest with the word “Police” written on it, and Detective Carey was wearing a police jacket. Their firearms were in their holsters. When the defendant opened the door, Detective Bernal smelled a stronger odor of marijuana. After speaking with the defendant, Detective Carey signaled Detective Bernal to walk inside the residence. The other officers were still on the side of the house. Detective Bernal stayed inside the house, and Detective Carey and the defendant went to the west side of the house. The defendant was not handcuffed. While Detective Bernal was inside the house, she saw baggies of marijuana as well as a pipe in plain view. Approximately three minutes later, Detective Carey and the defendant returned to the house. They went inside, sat on the couch and Detective Carey gave the defendant an informed consent form, which he signed, consenting to the search of the residence. Afterward, he was given a waiver of Miranda, rights form, which he signed in the officers’ presence. The defendant then gave a written statement. Other officers came into the house and proceeded to take pictures of the grow house. No weapons were drawn and no handcuffs were ever placed on the defendant.
The defendant was charged with unlawful possession of cannabis in violation of section 893.13(6)(a), and unlawfully and feloniously manufacturing cannabis with the intent to sell, in violation of section 893.13(l)(a)(2), Florida Statutes (2007). The defendant filed a motion to suppress on grounds that he did not willingly consent to the search, the search was not incident to a lawful arrest, and the evidence obtained was the fruit of the poisonous tree. The trial court granted the motion to suppress, and the State appeals.
We review the trial court’s grant of a motion to suppress using a mixed standard of review; the appellate court defers to the trial court’s findings regarding the facts and applies the de novo standard of review to legal conclusions. See Riggs v. State, 918 So.2d 274, 278 (Fla.2005) (holding that, when reviewing rulings on motions to suppress, “we ‘accord a presumption of correctness ... to the trial court’s determination of historical facts, but [we] independently review mixed questions of law and fact that ultimately determine constitutional issues’ ”); Hidelgo v. State, 25 So.3d 95 (Fla. 3d DCA 2009).
A warrantless search of a dwelling may be authorized by consent. See Georgia v. Randolph, 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). The State bears the burden to show the voluntariness of the consent by the preponderance of the evidence. Reynolds v. State, 592 So.2d 1082 (Fla.1992). The preponderance of the evidence is the appropriate standard of proof of whether the consent to a search was voluntary in a knock and talk encounter situation. State v. Navarro, 19 So.3d 370 (Fla. 2d DCA 2009); see also Murphy v. State, 898 So.2d 1031, 1032 n. 4 (Fla. 5th DCA 2005) (stating that “ ‘knock and talk’ encounter is a procedure used by police officers to investigate a complaint where there is no probable cause for a search warrant”). The preponderance of the evidence in this case established that the defendant’s consent was voluntary.
*317 The facts here do not constitute coercion sufficient to negate the consent that was obtained. The officers were on special detail responding to an anonymous tip. The anonymous tip was corroborated when the officers smelled marijuana outside the residence. At this point, the officers properly instituted the knock and talk procedure. See Navarro, 19 So.3d at 870. After knocking on the door, smelling a stronger odor of marijuana from inside the residence and, upon seeing marijuana and paraphernalia in plain view, the officers had probable cause for the search. The police obtained consent from the defendant for the search, and the defendant signed a waiver of Miranda rights form. The record reveals neither a police threat to obtain a search warrant nor other facts which would constitute coercion sufficient to negate the defendant’s voluntary consent; the police did not draw guns, did not make threats, and did not use handcuffs.
Moreover, even had the initial encounter been illegal, as the defendant contends, any taint from such an encounter does not extend to the subsequent consent obtained. See Connor v. State, 808 So.2d 598 (Fla.2001) (holding that, even if the initial encounter were illegal, where written consent and waiver of Miranda warnings were obtained prior to search, any taint from the encounter does not extend to a subsequent consent to search). The voluntariness of the defendant’s consent to search depends on the totality of the circumstances. U.S. v. Drayton, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). The voluntariness of the defendant’s consent will be upheld where the items seized were the result of a consensual search. Connor, at 598. The fact that the defendant signed a Miranda waiver after giving consent is of no consequence, and, based on the totality of the circumstances, the consent was voluntary. See generally U.S. v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (holding that the absence of proof that a person giving consent to search knew he could withhold his consent does not compel the conclusion that his consent was invalid); Wayne R. LaFave, 4 Search and Seizure § 8.2(j), at 119 (4th ed. 2004) (“[I]t is at best open to question ... whether the inclusion or exclusion of Miranda warnings in a given set of circumstances should weigh much in either direction in considering voluntariness.”).
Based on the totality of the circumstances and the aforementioned authorities, we reverse the trial court’s grant of the motion to suppress.
Reversed and remanded.
LAGAO, J., concurs.