# Third District Court of Appeal

## State of Florida

Opinion filed August 12, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-1449
Lower Tribunal No. 12-15466
_____

**The State of Florida,**
Appellant,

vs.

**Freddie Hall,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Teresa M. Pooler, Judge.

Pamela Jo Bondi, Attorney General, and Jay E. Silver, Assistant Attorney General, for appellant.

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for appellee.

Before SUAREZ, C.J., and SALTER, and FERNANDEZ, JJ.

SUAREZ, C.J.

The State of Florida appeals from the trial court's grant of a motion to suppress evidence of a taser found in Freddie Hall's car. We affirm.

In response to a BOLO stemming from a house burglary, the police found a car and two persons matching the general description of the suspects and vehicle. The car was parked in the semicircular driveway of a house about a mile from the burglary, and Mr. Small, the older male and the owner of the house, was on his porch talking with defendant Hall. Three police cars pulled up, one police vehicle blocked the driveway, and several officers got out. All wore clothing identifying them as police, and all were armed, though their guns were holstered. The officers testified that neither person seemed nervous when they pulled up. As one officer conversed with Mr. Small, other officers patted down Hall (the car's owner), took his car keys and asked to search the car. Hall agreed and was cooperative throughout, although testimony indicates he was visibly upset that the police frisked him and searched the car.

Two officers initially searched the car and found nothing. A third officer searched the car again and found a small personal taser in the console compartment, and a baggie of rock cocaine under the front seat. The police found no evidence from the burglary. Hall was not charged with possession of the cocaine because the State could not prove his knowledge of its existence. As a result of the taser discovery, however, Hall was charged with possession of a weapon by a convicted felon.

The officers testified that they were merely responding to the BOLO, and that they were looking for the three jewelry boxes that were reported stolen. All parties agree that this was a legitimate investigatory stop. The testimony of the officers and of the defense witness, Mr. Small, agree on most points. Mr. Small testified that Hall and he acquiesced to the search because the police took their IDs and the car keys, had blocked the driveway, and that there were about four police cars and at least as many officers present. Mr. Small stated that the officers were not rude or aggressive, but that he did not feel that he could leave the property, or go into his house, or refuse to do what the officers asked because he did not want to aggravate the police. The police did not get a signed consent from Hall to search the vehicle.

The trial court heard testimony and argument from both parties at the hearing on Hall's motion to suppress the fruits of the search. The trial court noted that she found enough reasonable suspicion to justify an investigatory stop. The judge determined that, viewing the totality of the circumstances, a reasonable person would not have felt able to leave the confrontation or to refuse the police requests, and that Hall's acquiescence to the search was not voluntary. The judge granted the defendant's motion to suppress the result of the search of his vehicle based on involuntary consent and totality of the circumstances.

We review the trial court's grant of a motion to suppress using a mixed standard of review; the appellate court defers to the trial court's findings regarding the facts and applies the de novo standard of review to the trial court's legal conclusions. Riggs v. State, 918 So. 2d 274, 278 (Fla. 2005) (holding that, when reviewing rulings on motions to suppress, "we 'accord a presumption of correctness ... to the trial court's determination of historical facts, but [we] independently review mixed questions of law and fact that ultimately determine constitutional issues' "); State v. Delgado, 92 So. 3d 314, 316 (Fla. 3d DCA 2012); Hidelgo v. State, 25 So. 3d 95 (Fla. 3d DCA 2009).

To validate a search without a warrant, the State must demonstrate that the search falls within a constitutional exception, one of which is voluntary consent. See Smith v. State, 753 So. 2d 713, 715 (Fla. 2d DCA 2000). When determining whether a consent to search was freely and voluntarily given, a court must examine the totality of the circumstances at the time the consent was obtained. See United States v. Mendenhall, 446 U.S. 544 (1980); Popple v. State, 626 So. 2d 185 (Fla. 1993); Reynolds v. State, 592 So. 2d 1082, 1086 (Fla. 1992). If the search is not preceded by police misconduct, the State must prove by a preponderance of the evidence that the consent was voluntarily given. See e.g., Faulkner v. State, 834 So. 2d 400 (Fla. 2d DCA 2003); State v. Collins, 661 So. 2d 962, 965 (Fla. 5th DCA 1995). A consensual encounter involves "minimal police contact." Popple,

626 So. 2d at 186. "During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them." Id. The citizen is free to leave. On the other hand, a person is seized in the constitutional sense when, based upon all the circumstances, a reasonable person would not feel free to leave. See G.M. v. State, 19 So. 3d 973, 978 (Fla. 2009). As the court said in Miller v. State, 865 So. 2d 584 (Fla. 5th DCA 2004), no single factor is dispositive. "Among the factors that the court should consider in its analysis are the place and time of the encounter, the number of officers, and the words and actions of the officers." Id. at 587; see also Dillon-Watson v. State, 61 So. 3d 476, 478 (Fla. 4th DCA 2011).

There is no dispute regarding the historical facts of this case. The relevant inquiry here is how a reasonable person in Hall's position would understand the situation. The State has the burden to prove that the necessary consent was given, and that it was freely and voluntarily provided, in light of the surrounding circumstances. "A mere submission to the apparent authority of a law enforcement officer does not render an action voluntary in the constitutional sense." Smith v. State, 997 So. 2d 449 (Fla. 4th DCA 2008); State v. Hall, 537 So. 2d 171, 172 (Fla. 1st DCA 1989) (same).

The State in its brief juxtaposes the rather benign facts present in this case with cases that present examples of obvious police coercion through show of force.

Despite the fact that, in this instance, the police were polite and did not draw their weapons, there was nevertheless the appearance of police authority and the circumstances were coercive in nature: the police arrived in three to four vehicles, blocked the driveway, frisked both parties, took their ID and car keys, and searched the vehicle three times before finding the small taser. Under these circumstances, the trial court made a determination that did not clearly violate any of the tests for voluntary/involuntary consent. The judge heard testimony from three police officers and the firsthand witness, and was persuaded that a reasonable person under the same conditions would not have felt free to deny the police request to search the vehicle. Based upon the totality of the circumstances, we cannot conclude that Hall would have felt free to leave during this encounter.

Affirmed.